**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1623-21

C.S. O/B/O M.A.L.H.,

    Plaintiff-Appellant,

v.

M.Y.H. and M.I.L.A.,

    Defendants-Respondents.

_____

Submitted September 13, 2022 – Decided October 13, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FD-16-0454-21.

Cesar Martin Estela, attorney for appellant.

Respondents have not filed a brief.

PER CURIAM

    Plaintiff C.S. (Caroline or plaintiff), who is the aunt of M.A.L.H. (Miguel), filed an application seeking custody of Miguel and requesting the

family court to make findings concerning Miguel's Special Immigration Juvenile (SIJ) status as called for under federal immigration law. See 8 U.S.C. § 1101(a)(27)(J) and 8 C.F.R. § 204.11(c).[1] Caroline appeals from a December 22, 2021 order that denied her application. Because the family court failed to make the required finding concerning Miguel's SIJ status, we vacate the order and remand for further proceedings.

## I.

In October 2020, Caroline filed a complaint for custody of Miguel and an application for SIJ status findings. The SIJ status application was supported by certifications from Caroline and Miguel. Caroline and Miguel also testified at hearings held on March 24, 2021, and May 6, 2021. The named defendants, who are the biological parents of Miguel, filed no papers, did not appear, and have not taken part in any of these proceedings. We summarize the relevant facts from the certifications and testimony provided by Caroline and Miguel. In doing so, we take no position on the credibility of the testimony but rely on that testimony because the family court made no credibility findings and pointed to no evidence that contradicted the testimony.

---

[1] We use initials and fictitious names because of the confidential nature of applications for SIJ status and child custody records. See R. 1:38-3(d)(18) and (13).

A-1623-21

Miguel was born in Honduras in January 2001. His biological father is M.I.L.A. (Manny) and his biological mother is M.Y.H. (Maria). Both Manny and Maria live in Honduras. Miguel testified that his father abandoned him when he was approximately two or three years old, thereafter he had no contact with his father, his father never provided any financial support for him, and he cannot live with his father. Concerning his mother, Miguel explained that when he was young, his mother worked hard to support him, but while he was still a child, his mother remarried and left him in the care of his maternal grandmother. Although Miguel's mother lived right next door to the grandmother, Miguel rarely saw his mother, he often was not fed, and if he returned to Honduras, he could not live with his mother because he had no relationship with his stepfather.

When Miguel was sixteen years old, he was beaten up by members of a Honduras criminal gang. Fearing that the gang would try to recruit him to engage in criminal activities, Miguel decided to go to the United States of America. In 2018, at the age of eighteen and with the assistance of his aunt and his uncle, Miguel travelled to and illegally entered the United States through Texas. In Texas, he was detained by federal immigration authorities but then

A-1623-21

released and sent to New Jersey to stay with his aunt and uncle. Since then, Miguel has lived with them, and they have supported him financially.[2]

Caroline testified that she was married to R.H.H. (Roberto), who is the maternal uncle of Miguel. She explained that she was seeking custody of Miguel because she did not think that he could safely return to Honduras. She also stated that she wanted to assist Miguel so that he could stay in the United States "where he [could] pursue his education and follow his dreams."

After hearing the testimony of Caroline and Miguel, the family court stated that it would issue its decision on May 20, 2021. The court apparently did not issue a decision on the record because we have not been provided with any transcript of a decision. Instead, on December 22, 2021, the family court issued an order denying plaintiff's application. No separate written or oral findings were made. The order stated:

> Plaintiff's application for custody, Special Immigration Juvenile Status, is hereby DENIED as Plaintiff has failed to demonstrate sufficient facts that reunification between [Miguel] and his "parent[s] is not viable due to abuse, neglect, abandonment, or similar basis under State law," as set forth by 8 U.S.C.A. § 1101(a)(27)(J)(i). Under the aforementioned statute, New Jersey Courts are required to apply New Jersey law when determining whether a minor has been

---

[2] The record is not entirely clear as to whether Miguel came to live with his aunt and uncle in 2018 or 2019.

abused, neglected, or abandoned under this special custody application. H.S.P. v. J.K., 223 N.J. 196, 213 (N.J. 2015) (citing 8 U.S.C.A. § 1101(a)(27)(J)(i)). See N.J.S.A. 9:6-1. See also N.J.S.A. 9:6-8.9 and N.J.S.A. 30:4c-12. This Court finds that the testimony and written/documentary evidence did not rise to the threshold of abuse, neglect, abandonment, or a similar basis under the law of the State of New Jersey. Therefore, this Court does not find reunification between the juvenile and the Defendants 'not viable' in their home country due to circumstances that amount to abuse, neglect, abandonment, or a similar basis under the laws of the State of New Jersey. This application is therefore denied.

## II.

Plaintiff now appeals from the December 22, 2021 order. She argues that the family court erred in (1) not providing reasons for its ruling; (2) finding, in effect, that Miguel could be reunified with his mother in Honduras; and (3) finding that the record did not establish that Miguel's parents had abused, neglected, or abandoned him. We agree with plaintiff's first point that the court failed to make the required findings concerning Miguel's SIJ status.

In 2008, Congress amended the Immigration Act of 1990 by adopting the Trafficking Victims Protection Reauthorization Act of 2008 (the Reauthorization Act), Pub. L. No. 110-457, 122 Stat. 5044. The Reauthorization Act allows an undocumented juvenile who is present in the United States to

receive SIJ status if the juvenile is a dependent of a court located in the United States or had been placed in the custody of an agency or individual by a court and reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, abandonment, or a similar basis under state law. 8 U.S.C. § 1101(a)(27)(J).

The Immigration Act's implementing regulations further clarify an undocumented juvenile's eligibility for SIJ status. See 8 C.F.R. § 204.11(c). As interpreted by the New Jersey Supreme Court, there are five eligibility requirements under the governing federal statute and regulations:

> (1) The juvenile is under the age of 21 and is unmarried;
>
> (2) The juvenile is dependent on the court or has been placed under the custody of an agency or an individual appointed by the court;
>
> (3) The "juvenile court" has jurisdiction under state law to make judicial determinations about the custody and care of juveniles;
>
> (4) That reunification with one or both of the juvenile's parents is not viable due to abuse, neglect, or abandonment or a similar basis under state law; and
>
> (5) It is not in the "best interest" of the juvenile to be returned to his parents' previous country of nationality or country of last habitual residence[.]

6

> [H.S.P. v. J.K., 223 N.J. 196, 210 (2015) (quoting In re Dany G., 223 Md. App. 707, 117 A.3d 650, 655 (Md. Ct. Spec. App. 2015)).]

In H.S.P., the Court explained the family court's limited role in determining SIJ status. State family courts do not "render[] an immigration determination." Ibid. Instead, the state family court order in an SIJ status case serves "merely [as] a prerequisite that must be fulfilled before a juvenile can submit his or her application for SIJ status to [United States Citizenship and Immigration Services]." Ibid.

Accordingly, in H.S.P., the Court explained that a family court's findings must "only relate to matters of child welfare." Id. at 212. In making the predicate findings, the family court must apply the child welfare laws of New Jersey. Ibid. The Court has also instructed that family courts "should make factual findings with regard to each of the requirements listed in 8 C.F.R. § 204.11." Id. at 201. Furthermore, "[w]hen analyzing whether reunification with [one] or both parents is not viable due to abuse, neglect, or abandonment, the [family court] shall make separate findings as to each parent[.]" Ibid. In short, a state family court's role is to "make factual findings based on state law about the [criteria of] abuse, neglect, or abandonment, family reunification, and best interests of the child." Id. at 214-15 (quoting Immigration Relief for Abused

Children, U.S. Citizenship and Immigration Service, (2014), https://www.uscis.gov/sites/default/files/document/brochures/Immigration_Relief_for_Abused_Children-FINAL.pdf).

The family court in this matter did not make all the federally-required findings concerning SIJ status. When Caroline filed her application, Miguel was under the age of twenty-one and he certified that he was not married. The court, however, never determined if Miguel was dependent on the court or should be placed under the custody of Caroline. The court also did not fully address reunification. In that regard, the family court did not address whether Miguel could not be reunified with just his mother or just his father. Moreover, the court engaged in no analysis of the facts presented in the record concerning whether Miguel had been abused, neglected, or abandoned by his mother and father.

On remand, the court will need to address as to each parent whether reunification was not viable due to abuse, neglect, or abandonment. In making those findings, the family court "should not concern itself with whether the applicant filed the petition primarily to obtain legal immigration status for the juvenile, or whether the federal immigration authorities should or should not grant SIJ status." O.Y.P.C. v. J.C.P., 442 N.J. Super. 635, 642 (App. Div. 2015).

"New Jersey state courts are not charged with undertaking a determination of whether an immigrant's purpose in applying for SIJ status matches with Congress's intent in creating the avenue of relief. That determination is properly left to the federal government." H.S.P., 223 N.J. at 214. The family court's role in the SIJ process "is to make factual findings based on state law about the abuse, neglect, or abandonment, family reunification, and best interests of the child." Id. at 214-15.

In remanding, we recognize that Miguel is now older than twenty-one years of age. The SIJ status application, however, was made when he was twenty years old and, therefore, still eligible for an SIJ status determination. Accordingly, that issue is not moot. Instead, the court needs to make the SIJ status determination as of the date of the application. We express no opinion of whether Miguel qualifies for SIJ status. Nevertheless, if the court determines that he qualifies, his ultimate immigration status will be determined by federal immigration authorities.

Finally, we point out that Caroline's request for custody of Miguel may be moot. Generally, New Jersey statutes provide for the granting of custody for juveniles under eighteen years of age. O.Y.P.C., 442 N.J. Super. at 642. Although there are some sources of jurisdiction over persons between the ages

9

of eighteen and twenty-one, ibid., Miguel is now older than twenty-one and does not appear to be eligible for a custody determination.  See N.J. Div. of Youth & Fam. Servs. v. W.F., 434 N.J. Super. 288, 296-97 (App. Div. 2014) (explaining that a father's appeal seeking custody of his three children was rendered moot when the children reached the age of majority).

In summary, we remand this matter to the family court for further proceedings consistent with this opinion.  Because the SIJ status portion of the application is time-sensitive, we direct the family court to conduct any further hearing it deems necessary and make the requisite findings in writing within ninety days of the date of this opinion.  We do not retain jurisdiction.

Reversed and remanded.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1623-21